UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MAXINE MORGAN, *individually and on behalf of all others similarly situated,*

                 Plaintiff,

-against-

TEMPOE, LLC, WHYNOTLEASEIT LLC, HOME SWEET HOME FURNITURE, CORP. ORLANDO ZAYAS, AND ALEX RABINOVICH,

                 Defendants.

Civil Action No.: 1:17-cv-54

**CLASS ACTION COMPLAINT AND DEMAND FOR TRIAL BY JURY**

---

Plaintiff Maxine Morgan ("Plaintiff"), individually, and on behalf of all those similarly situated, by and through counsel, CHARLES, PASCAL, COHEN P.C., Attorneys at Law, as and for Plaintiff's Complaint against the Defendants, Tempoe, LLC, WhyNotLeaseIt LLC (collectively "TEMPOE"), Home Sweet Home Furniture, Corp. ("HOME SWEET HOME"), Orlando Zayas, and Alex Rabinovich (all collectively as "Defendants"), respectfully sets forth, complains and alleges, upon information and belief, the following:

**NATURE OF THE ACTION**

1.     This action for damages arises from the defendants' violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.* ("TILA"), Article 22A of the General Business Law of the State of New York, NY GBL § 349, Article 5 of New York General Obligations Law, NY GOL § 5-901, and other appropriate rules, regulations, statutes and ordinances.

1

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as well as 15 U.S.C. §§ 1601, 1640 *et. seq*. and 28 U.S.C. § 2201.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

4. Declaratory relief is available pursuant to 28 U.S.C. §§2201, 2202.

## PARTIES

5. Plaintiff is a resident of the State of New York, Kings County. At all times relevant herein, Plaintiff resided at this address.

6. Plaintiff is a natural person.

7. Defendant TEMPOE is a limited liability company that deals in financing or leasing contracts, which are typically offered to consumers through partnerships with various retail organizations. Defendant TEMPOE maintains a principal place of business at 1750 Elm Street, Suite 1200, Manchester, New Hampshire 03104, and also maintains offices at 775 Montgomery Road, Suite 250, Cincinnati, Ohio 45236.

8. Defendant WHYNOTLEASEIT, LLC is or was a limited liability company maintaining a principal place of business at 1750 Elm Street, Suite 1200, Manchester, New Hampshire 03104. Upon information and belief, Defendant WHYNOTLEASEIT changed its name to TEMPOE in or about 2015; both entities are essentially the same outfit dealing in the same kind of business.

9. Upon information and belief, Defendant Orlando Zayas is an adult individual residing in the State of New Hampshire. Defendant Orlando Zayas is sued individually and in his capacity as an owner, officer, director, manager and/or agent of Defendant TEMPOE.

10. Upon information and belief, Orlando Zayas was vested with the responsibility to manage Defendant TEMPOE.

11. Upon information and belief, Orlando Zayas was responsible for the management and affairs of Defendant TEMPOE.

12. Upon information and belief, Orlando Zayas was responsible for the day-to-day operations of Defendant TEMPOE.

13. At all relevant times, Orlando Zayas was responsible for the supervision of TEMPOE's employees, agents and/or representatives.

14. Defendant HOME SWEET HOME is a retail furniture store maintaining offices at 2425 Flatbush Avenue, Brooklyn, New York 11234. Upon information and belief, Defendant HOME SWEET HOME is an affiliate, agent, or partner of Defendant TEMPOE.

15. Upon information and belief, Defendant Alex Rabinovich is an adult individual residing in the State of New York. Defendant Alex Rabinovich is sued individually and in his capacity as an owner, officer, director, manager and/or agent of Defendant HOME SWEET HOME.

16. Upon information and belief, Alex Rabinovich was vested with the responsibility to manage Defendant HOME SWEET HOME.

17. Upon information and belief, Alex Rabinovich was responsible for the management and affairs of Defendant HOME SWEET HOME.

18. Upon information and belief, Alex Rabinovich was responsible for the day-to-day operations of Defendant HOME SWEET HOME.

19. At all relevant times, Alex Rabinovich was responsible for the supervision of HOME SWEET HOME's employees, agents and/or representatives.

20. Defendants contend that Plaintiff entered into a leasing agreement for the use of personal

3

property by Plaintiff for a period of time exceeding four months, and for a total contractual obligation not exceeding $50,000, primarily for personal, family, or household purposes. As such, the contract at issue herein is a "consumer lease" as that term is defined by 15 U.S.C. § 1667(1) of the TILA.

21. Plaintiff is a natural person who leased personal property or was offered a consumer lease. As such, Plaintiff is a "lessee" as that term is defined by 15 U.S.C. § 1667(2) of the TILA.

22. Each defendant named herein, regularly engaged in leasing, offered to lease, or arranged to lease personal property to Plaintiff under a consumer lease. As such, Defendants are "lessors" as that term is defined in 15 U.S.C. § 1667(3) of the TILA.

**GENERAL FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

<u>Plaintiff agreed to purchase furniture through a financing agreement.</u>

23. On or about April 22, 2016, Plaintiff conveyed to Defendant HOME SWEET HOME her desire to purchase, through financing, certain items for sale by Defendant. Specifically, Plaintiff sought to purchase one (1) mattress, and one (1) chest of drawers (collectively "Furniture").

24. The total cost of the Furniture amounted to fourteen hundred fifty dollars ($1,450.00).

25. In order to secure financing, Plaintiff placed a deposit on the Furniture.

26. Prior to April 22, 2016, HOME SWEET HOME expressed to Plaintiff that is arranges financing for its customers. In or about 2015, Plaintiff purchased items (not at issue herein) from HOME SWEET HOME through financing wholly arranged by HOME SWEET HOME and financed through Capital One Bank ("2015 Capital One financing").

27. In or about April 28, 2016, in reliance on Plaintiff's previous experience and prior relationship with HOME SWEET HOME, Plaintiff returned to HOME SWEET HOME's place

of business and agreed to allow HOME SWEET HOME to arrange for financing of the Furniture at issue herein.

28.     HOME SWEET HOME expressed to Plaintiff that it had arranged for her to obtain the Furniture by way of a third party financial institution, and instructed Plaintiff to provide her financial information.

29.     In reliance on her prior experience with HOME SWEET HOME, Plaintiff provided her financial information, believing that HOME SWEET HOME had arranged for financing similar to the 2015 Capital One financing.

30.     Plaintiff subsequently took delivery of the Furniture. Plaintiff reasonably believed that she had obtained the Furniture through a financing agreement arranged and/or serviced by HOME SWEET HOME.

31.     Beginning April 29, 2016, Plaintiff has paid approximately one hundred thirty dollars and fifty cents ($130.50) every fourteen days to Defendant TEMPOE, by way of an automatic debit payment system arranged by Defendants.

32.     As of October 2016, Plaintiff has paid a total of eighteen hundred twenty-six dollars and fifty cents ($1,826.50) to Defendant TEMPOE.

33.     At all relevant times, Plaintiff reasonably believed that each payment or automatic debit deducted from her bank account went toward paying any balance remaining on the Furniture, and that each payment brought her closer to owning the Furniture.

<u>Plaintiff learned that she had not entered into the contemplated financing agreement after payment was already remitted.</u>

34.     In or about October 2016, Plaintiff learned that payments were still being deducted from her bank account for the Furniture, despite having paid eighteen hundred twenty-six dollars and fifty cents ($1,826.50) for furniture priced at fourteen hundred fifty dollars ($1,450.00).

35. Plaintiff subsequently contacted HOME SWEET HOME to learn more about the total finance charge she was expected to pay; when she could expect the balance to be paid in full; and when she could expect the payments to cease.

36. In response to Plaintiff's inquiry, HOME SWEET HOME instructed Plaintiff to contact TEMPOE directly to learn more about payment arrangements and/or the financing terms relating to the Furniture.

37. In or about October 19, 2016, Plaintiff contacted TEMPOE to learn why payments were still being deducted from her bank account and when such payments and deductions would end.

38. During said communication, TEMPOE declared that Plaintiff had entered into a consumer leasing contract (as opposed to a financing agreement) with TEMPOE. Defendant TEMPOE further stated that Plaintiff did not own the Furniture and was not currently on a path that would automatically conclude in ownership of the Furniture.

39. Defendant TEMPOE further informed Plaintiff that she may choose to purchase the Furniture for an additional eight hundred dollars ($800.00), above the eighteen hundred twenty-six dollars and fifty cents ($1,826.50) she had already paid to TEMPOE.

40. Plaintiff explained to TEMPOE that she had expressed her desire and intention to enter into a financing agreement; had only intended to purchase the Furniture; and believed that she had, in fact, entered into a financing agreement that was arranged and/or serviced by Defendant HOME SWEET HOME.

<u>Defendants wrongfully entered Plaintiff into a consumer lease agreement<br>without Plaintiff's knowledge or consent.</u>

41. On October 19, 2016, for the first time, TEMPOE provided to Plaintiff via facsimile, a copy of a consumer lease agreement dated April 28, 2016 that allegedly bore Plaintiff's electronic signature (the "Agreement").

6

42. The Agreement was and is effectively distinct from a the contemplated financing agreement.

43. Plaintiff did not have an opportunity to review the terms of the Agreement prior to October 19, 2016.

44. Plaintiff was not provided with a copy of the Agreement until October 19, 2016.

45. Plaintiff's actual written signature does not appear anywhere on the Agreement.

46. The Agreement states that Plaintiff leased a chest (product code: 20596) with a price of thirteen hundred thirty-one dollars and eighty cents ($1,331.80).

47. Said chest, is the only product listed on the Agreement.

48. The mattress for which Plaintiff had bargained, and for which Plaintiff contemplated remitting or arranging payment, and toward which Plaintiff believed she had been making payments, does not appear anywhere in the Agreement.

49. However, said mattress and chest are listed as a separate line items on an invoice numbered 2821, created by HOME SWEET HOME and dated April 22, 2016 (the "Invoice").

50. The Invoice also states, *inter alia*, that "all sales are final". Nowhere within the four corners of the Invoice is the "leasing" or "renting" of any item mentioned.

51. The Invoice lists the furniture Plaintiff intended to purchase through financing.

52. Plaintiff did not convey to Defendants an intent to lease or rent the Furniture or any other item at any time.

53. Without Plaintiff's consent, Defendants orchestrated a scheme where the Furniture Plaintiff had expressed an interest in financing, was provided to Plaintiff through an undesirable and uncontemplated leasing arrangement.

54. Further, Defendants lease Agreement contained unfair and impermissible automatic renewal language, which continuously renewed the Agreement without Plaintiff's knowledge and without notice to Plaintiff.

55. Plaintiff would not have agreed to the terms of the Agreement if Plaintiff had been able to review the terms of the Agreement.

56. Had she been provided with an accurate disclosure, Plaintiff would have sought and obtained a lower price and a favorable financing agreement, as she had obtained in the past.

57. To the extent Plaintiff ratified a consumer lease agreement with TEMPOE, an act which Plaintiff denies, Plaintiff reasonably believed that she was agreeing to a contemplated purchase or finance agreement, and provided her financial information for those purposes.

### Defendants used the "inTEMPOE" leasing system to ensnare Plaintiff, and others similarly situated, into uncontemplated and unfavorable consumer lease agreements.

58. Defendant TEMPOE has created a leasing system, "inTEMPOE", to easily enable and empower its retail partners, such as Defendant HOME SWEET HOME, to ensnare unwitting consumers into draconian leasing and payment terms for Defendants' benefit.

59. As is the case herein, TEMPOE's retail partners and agents can and do complete lease applications on behalf of consumers without the consumers' knowledge, without any input from the consumers, without providing the consumers with an opportunity to view or sign the lease agreements, and without any oversight from TEMPOE at the most crucial moments.

60. Unlike traditional financial institutions, TEMPOE encourages fast processing and little to no review of lease agreements. On its website TEMPOE states that:

> "inTEMPOE has several differentiating factors for retailers and their customers. inTEMPOE helps to minimize physical touch points, allowing *retailers to process applications* and complete transactions quickly and simply, as well as fully integrate with any system on any platform."

61. As is the case with Plaintiff, TEMPOE's system is designed to provide "quick approvals", "convert turndowns into sales" and provide "automated retailer funding." To achieve its goals, TEMPOE's system operates in such a manner, that a consumer may reasonably believe that he or she is making a credit card or debit card purchase or deposit, or agreeing to financing, where said consumer is instead being bound to an undesirable lease agreement.

62. As a result of Defendants' actions, Plaintiff experienced and continues to experience humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment.

63. Defendants' statements and actions upset and worried and continue to worry Plaintiff.

64. At all relevant times herein, Defendants knew or had reason to know that they were obligated to comply with the provisions of the Truth in Lending Act when conducting business.

65. At all relevant times herein, Defendants knew or had reason to know that they were obligated to comply with the provisions of New York General Obligations Law when conducting business in New York.

66. At all relevant times herein, Defendants knew or had reason to know that they were obligated to comply with the provisions of New York General Business Law when conducting business in New York.

**COUNT I**
**Truth in Lending Act ("TILA")**
**15 U.S.C. §§ 1601, *et. seq*.**

67. Plaintiff repeats, reiterates and incorporates the allegations contained in the preceding paragraphs with the same force and effect as if the same were set forth at length herein.

68. Defendants violated several sections of the TILA, 15 U.S.C. § 1601, *et seq.* and Federal Reserve Board Regulation M, 12 C.F.R. 213 ("Regulation M").

69. Defendants are lessors as that term is defined in the TILA and Regulation M.

70. The Agreement at issue, is a consumer lease as that term is defined by the TILA and Regulation M.

71. Defendants failed to provide Plaintiff with the required disclosures in violation of the TILA and Regulation M, 12 CFR 213.3(a).

72. Defendants failed to provide Plaintiff with a proper description of the leased property in violation of the TILA and Regulation M, 12 CFR 213.4(a).

73. Defendants failed to provide Plaintiff with required disclosures prior to the consummation of the Agreement, to the extent that said Agreement was consummated, in violation of the TILA and Regulation M, 12 CFR 213.3(a)(3).

74. Defendants failed to provide Plaintiff with clear and conspicuous disclosures in writing, and in a form that Plaintiff could retain, in violation of TILA and Regulation M, 12 CFR 213.3(a), upon consummation of the Agreement, to the extend the Agreement was consummated.

75. At all relevant, Defendants failed to provide Plaintiff with the terms of the Agreement.

76. But for Defendants' concealment of the Agreement itself, the terms of the Agreement and required disclosures, Plaintiff would not have entered into the Agreement.

77. As a result of Defendants' violation of the TILA, Plaintiff has been damaged and is entitled to statutory damages, and all costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1640, Regulation M and other the relevant provisions of the TILA.

**COUNT II**
**Negligence**

78. Plaintiff repeats, reiterates and incorporates the allegations contained in the preceding paragraphs with the same force and effect as if the same were set forth at length herein.

79. Defendants owed a duty to Plaintiff to provide accurate information and to provide an opportunity for Plaintiff to review her rights, interest, and obligations as set out by the terms of the Agreement.

80. Defendants failed to exercise reasonable care in providing accurate information to Plaintiff.

81. Defendants failed to provide Plaintiff with an opportunity to review the terms of the consumer lease Agreement when it leased or sold the Furniture to Plaintiff or otherwise assigned certain obligations to Plaintiff.

82. Defendants failed to provide Plaintiff with accurate information about the terms of the Agreement and the nature of Agreement.

83. Defendants breached its duties to Plaintiff, and its conduct caused Plaintiff injury.

84. As a result of Defendants breach, Plaintiff has suffered distress, humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment. As a result of Defendants' actions, Plaintiff has incurred damages, attorney's fees and costs and has been injured as alleged in an amount to be determined at trial.

**COUNT III**
**Negligent Misrepresentation**

85. Plaintiff repeats, reiterates and incorporates the allegations contained in the preceding paragraphs with the same force and effect as if the same were set forth at length herein.

86. Defendant HOME SWEET HOME and Plaintiff maintained a special ongoing relationship.

87. Defendants had access to information that Plaintiff was not similarly able to access.

88. Defendants owed a duty to Plaintiff to impart correct information to Plaintiff and/or to not misinform Plaintiff.

89. Defendants failed to provide correct information to Plaintiff. Defendant misrepresented the terms and nature of the Agreement.

90. Plaintiff reasonably relied on the incorrect information provided by Defendants.

91. Defendants were aware of the use to which the information would be put and supplied it for that purpose.

92. As a proximate result of Defendants' breach, Plaintiff has suffered distress, humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment. As a result of Defendants' actions, Plaintiff has incurred damages, attorney's fees and costs and has been injured as alleged in an amount to be determined at trial.

## COUNT IV
### Fraud, Fraudulent Inducement, Fraudulent Concealment, Fraud in Factum

93. Plaintiff repeats, reiterates and incorporates the allegations contained in the preceding paragraphs with the same force and effect as if the same were set forth at length herein.

94. In order to induce Plaintiff to enter into an undesirable agreement, Defendants intentionally and fraudulently concealed from Plaintiff, that Defendants intended to bound Plaintiff to a consumer lease agreement not contemplated or bargained for by Plaintiff, and which required Plaintiff to pay approximately twice the amount represented as the purchase price of the Furniture.

95. As part of the fraudulent scheme, Defendants intentionally and fraudulently represented that Plaintiff was entering into a finance agreement, as Plaintiff had previously done with Defendant HOME SWEET HOME, when in fact Plaintiff was entered into a leasing agreement with no ownership interest.

96. As part of the fraudulent scheme, Defendant HOME SWEET HOME completed and submitted an application for a consumer lease agreement to Defendant TEMPOE on Plaintiff's behalf and without Plaintiff's consent or knowledge.

97. As part of the fraudulent scheme, Defendant TEMPOE entered Plaintiff into a consumer lease agreement, which was never seen or authorized by Plaintiff, and a copy of which was not provided to Plaintiff until five months after Plaintiff's purported execution of the Agreement.

98. Plaintiff justifiably relied on Defendants' misrepresentations and omissions of material facts.

99. Defendants knew that Plaintiff would rely on its misrepresentations and omissions.

100. As a result of Defendants' misrepresentations, Plaintiff sustained losses and damages.

101. Had Plaintiff not been misled by Defendants, she would not have agreed to the terms of the consumer lease Agreement, which placed a significant financial burden on Plaintiff.

102. As a result of Plaintiff's reasonable reliance upon Defendants misrepresentations, Plaintiff has been damaged in an amount to be determined at trial, and is entitled to actual and punitive damages, attorneys' fees, all costs and expenses.

### COUNT V
### New York General Business Law
### NY GBL § 349

103. Plaintiff repeats, reiterates and incorporates the allegations contained in the preceding paragraphs with the same force and effect as if the same were set forth at length herein.

104. The acts, practices, and conduct engaged in by Defendants and complained of herein constitute "deceptive acts and practices" within the meaning and in violation of Article 22A of the General Business Law of the State of New York, NY GBL § 349.

105. Plaintiff has suffered and continues to suffer actual damages as a result of the foregoing acts and practices, including damages associated with, among other things, humiliation, anger, anxiety, emotional distress, fear, frustration and embarrassment caused by Defendants.

106. By virtue of the foregoing, Plaintiff is entitled to recover actual damages, trebled, together with reasonable attorneys' fees.

**COUNT VI**
**New York General Obligation Law**
**NY GOL § 5-901**

107. Plaintiff repeats, reiterates and incorporates the allegations contained in the preceding paragraphs with the same force and effect as if the same were set forth at length herein.

108. TEMPOE violated NY GOL § 5-901 because TEMPOE failed to provide to Plaintiff at least fifteen days prior to the end of the initial lease term, written notice (served personally or by mail) that the lease agreement would renew automatically.

109. Plaintiff continues to unjustly incur charges associated with the consumer lease agreement due to Defendants unlawful acts and practices.

110. By virtue of the foregoing, Plaintiff is entitled to recover damages caused by unlawful provisions of TEMPOE's consumer lease agreement.

**CLASS ACTION ALLEGATIONS**

111. Plaintiff brings this action individually and as a class action on behalf of all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

112. The agreements at issue herein are in the form of a lease for personal property for a period of time exceeding four months, and for a total contractual obligation not exceeding $50,000, primarily for personal, family, or household purposes, and are held by natural persons, or a "consumer lease" as that term is defined by 15 U.S.C. § 1601 *et seq.* and Regulation M.

113. Subject to discovery and further investigation which may cause Plaintiff to modify the following class definition at the time Plaintiff moves for class certification, Plaintiff seeks certification of a Class initially defined as follows:

> Excluding persons who, prior to the date of this action is certified to proceed as a class action, either (a) died, (b) commenced an action in any court against TEMPOE alleging a violation of the Truth in Lending Act (c) signed a general release of claims against TEMPOE, or (d) is a Judge assigned to this case or member of such Judge's staff or immediate family, the Class consists of:

> All consumers residing in the United States, with whom any of the Defendants allegedly entered into a consumer lease agreement, by way of a kiosk, point-of-sale system, or ecommerce site, without the consumer's review or authorization of the consumer lease agreement, or where Defendants failed to provide the consumer with required disclosures, or where Defendants failed to provide the consumer with a proper description of the leased property, or where Defendants failed to provide the consumer with required disclosures prior to the consummation of the consumer lease agreement, or where Defendants failed to provide the consumer with clear and conspicuous disclosures in writing, and in a form that Plaintiff may keep.

114. Plaintiff seeks to recover statutory damages, attorney's fees and costs on behalf of all class members under the TILA, Regulation M and NY GBL § 349.

115. The class for whose benefit this action is brought is so numerous that joinder of all members is impracticable.

116. There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals.

117. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The asserted statutory schemes provide for damages payable to each class member.

118. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

119. Plaintiff's claims are typical of the claims of the members of the Class.

120. The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

121. Plaintiff does not have interests antagonistic to those of the Class.

122. The Class, of which Plaintiff is a member, is readily identifiable.

123. Plaintiff will fairly and adequately protect the interests of the Class, and has retained competent counsel experienced in the prosecution of consumer litigation.

124. Proposed Class Counsel have investigated and identified potential claims in the action; have experience in handling consumer claims of the type asserted in this action.

125. The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action.

126. The prosecution of separate actions by individual members of the class would create the risk that adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

127. Plaintiff does not anticipate any difficulty in the management of this litigation.

## DEMAND FOR TRIAL BY JURY

128. Plaintiff hereby demands a trial by jury for all claims and issues in this complaint for which the Plaintiff is or may be entitled to a jury trial.

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Maxine Morgan, individually and on behalf of all those similarly situated, demands judgment from the Defendants as follows:

A. For certification of the instant matter as a class action, appointing the named Plaintiff as representative of the class, and appointing the attorneys of Charles, Pascal, Cohen, P.C. as class counsel;

B. For damages in favor of Plaintiff pursuant to 15 U.S.C. § 1667d(a);

C. For maximum statutory damages in favor of Plaintiff, and all persons similarly situated, pursuant to 15 U.S.C. § 1640(a);

D. For attorney's fees, litigation expenses and costs in connection with this action pursuant to 15 U.S.C. § 1640(a)(3) and NY GBL § 349;

E. For damages, trebled, in favor of Plaintiff pursuant to NY GBL § 349;

F. An order enjoining TEMPOE from automatically renewing the Agreement;

G. An order rescinding the Agreement pursuant to the TILA;

H. For a declaration that the Defendants' practices violated the TILA;

I. For a declaration that the Defendants' practices violated the NY GBL;

J. For a declaration that the Defendants' practices violated the NY GOL;

K. For pre-judgment and post-judgment interest; and,

L. For any such other and further relief, as well as further costs, expenses and disbursements of this action, as this Court may deem just and proper.

Dated: November 21, 2016

Respectfully submitted,

 /s/ Shawn cohen
Shawn Cohen, Esq.
**CHARLES, PASCAL, COHEN P.C.**
405 RXR Plaza
Uniondale, NY 11556
P (516) 522-0677
F (516) 706-1978
scohen@cpcohen.com
*Attorneys for Plaintiff*


 /s/ Lesa Pascal
Lesa Pascal, Esq.
**CHARLES, PASCAL, COHEN P.C.**
405 RXR Plaza
Uniondale, NY 11556
P (516) 522-0677
F (516) 706-1978
lpascal@cpcohen.com
*Attorneys for Plaintiff*